MICHAEL J. KEGRIZE, PLAINTIFF-DEFENDANT IN ERROR,
v. WILLIAM H. NEIDLINGER, DEFENDANT-PLAINTIFF
IN ERROR.

Argued November 27, 1912—Decided March 3, 1913.

The plaintiff brought suit on certain written obligations by which the defendant acknowledged that he was indebted to the plaintiff for certain moneys. The defendant offered testimony tending to show that the obligations were executed and delivered as an acknowledgment of the amounts which the plaintiff had advanced to the defendant to be by him expended, at plaintiff's request, in the promotion of a joint enterprise in which both were interested and which proved to be a failure. *Held*, that the defendant was entitled to have the jury determine whether the obligations were based upon a lawful consideration, and it was error to refuse him that right.

On error to the Supreme Court.

For the plaintiff in error, *Coult & Smith* and *George H. Engelhard* (of the New York bar).

For the defendant in error, *Howe & Davis* and *John A. Bernhard*.

The opinion of the court was delivered by

BERGEN, J. This action was brought to recover money which the plaintiff claims to have loaned to the defendant, and in support thereof produced and offered in evidence three paper writings, the first of which bears date April 10th, 1900, and is in form a promissory note for $549, payable thirteen months after date. The second bears date May 22d, 1903, and is in form a due-bill for the sum of $543.20, payable on demand, "my share in full for Carnegie expenses." The third bears date August 18th, 1903, and is in form a due-bill payable on demand, for the sum of $2,513.60, "as per note dated Paris, September 30th, 1897." Each of these papers was signed by the defendant, and a payment as of February 16th, 1906, of $75 was endorsed on the note of April 10th,

1900. The trial court directed a verdict for the plaintiff for $4,116.84, the amount due after the allowance of admitted payments, on the three written obligations above mentioned, which action of the trial court is assigned for error.

The plaintiff testified that he loaned the money represented by the note of April 10th, 1900, and the due-bill of August 18th, 1903, to the defendant, a considerable portion, while he was in Paris, and that it was sent to him at different times and generally at about the rate of $150 a month, and that the last due-bill was given to represent the share of the defendant in the expenses of a studio in Carnegie Hall, which was to be borne equally by the plaintiff and the defendant, although the entire sum was advanced by the plaintiff.

The plaintiff also testified that he had known the defendant for about fifteen years, and he first met him when both were teaching music at the Ogontz School, near Philadelphia.

From certain letters written by the plaintiff an inference is fairly deducible that he was interested in establishing on a considerable scale what he calls "The International Conservatory of Music," and that he was urging the defendant while abroad to promote this scheme. In one of the letters he writes: "For let it be known, old man, that we will earn money hand over fist as soon as we get about it in real earnest. Ten thousand a year apiece would be a small thing for us * * * since we have started in we might as well make up our minds to all being millionaires soon." In another letter he writes: "You will hold out until the thing goes, and so do not fret about it. Let me know a month beforehand when you want me to begin to send money, and how much a month. Try to let me off on $100 a month if you can * * * also, if you have any scheme to further the Con. and need more money, do not sacrifice the Con. scheme, but let me know how much you want. You can start advertising at once if you think it best and I will hustle up the money."

Again in another letter he wrote: "Remember, I am ready to keep on earning money here to hold the thing up until she is positively safe and on easy running ground. All this is vital to me, and it would be very funny if I could not hold out

a good long while to see our pet venture going like a cutter before a free breeze."

The defendant admitted that the due-bill of May 22d, 1903, for $543.20, was due and payable, and also that of the note of April 10th, 1900, for $549; $149 was due, less a payment of $75, that is he disputes $400 of the note of April 10th, 1900, and the whole of the note of August 18th, 1903, for $2,513.60.

The defence which is set up is, that at the request of the plaintiff, the defendant entered into a joint adventure with him to establish an International Conservatory of Music in Paris, and that at the request of the plaintiff he rented expensive quarters and generally followed the advice and suggestions of the plaintiff regarding the course to be pursued in carrying out the scheme, and that the money which the plaintiff advanced and is now suing for was so advanced by him in the promotion of this joint enterprise, and that the defendant himself by his earnings contributed to the enterprise four-fifths of the cost. The defendant admits giving these obligations, but says that they were without consideration and simply for the purpose of furnishing plaintiff with evidence of the amount which he had advanced; there was evidence from which an inference supporting the contention of the defendant may properly be drawn. The trial court in directing a verdict for the plaintiff held that although a partnership might be found by the jury to have existed, nevertheless the defendant as one of the partners having by his written obligations acknowledged his indebtedness to the plaintiff, the latter was entitled to sue upon such obligations. Granting this proposition, but without so deciding, we think the trial court committed an error in refusing to submit to the jury the question whether the defendant had made out his case, for manifestly if the money which the plaintiff claims to have advanced was advanced by him in the furtherance of a joint enterprise, towards which the defendant advanced a much larger sum, there would be no obligation resting upon the defendant to repay the plaintiff what he had advanced, without some

definite contract requiring it, and therefore, if the defendant was not bound to pay, no consideration existed for the promise.

If the transactions between these parties amounted to a joint adventure, a part only of what the plaintiff advanced might have been found to be due by the jury, but under the direction in this case the whole amount was awarded the plaintiff.

The defendant's testimony tended to show that the obligations were executed and delivered as an acknowledgment of the amounts which the plaintiff had advanced to the defendant to be by him expended, at the plaintiff's request, in the promotion of a joint enterprise, which proved a failure. Under this state of the case we are of opinion that the defendant was entitled to have the jury determine whether the obligations were based upon a lawful consideration, and that he was erroneously deprived of that right by action of the trial court in directing a verdict for the full amount claimed against him.

The trial court in disposing of the question of want of consideration assumed that the defendant recognized his obligation to pay the amount stated in the note and due-bills, from the fact of the giving of them, saying: "From all of which there arises some presumption of consideration; for in the first place men do not ordinarily obligate themselves to pay money that they do not owe, or do not think they owe, and, in the next place any legal obligation to pay is legal because it is supported by a consideration either good or valuable, either implied from seal or resulting from facts, and a presumption naturally arises in favor of the recoverability of the money which the obligor has so bound himself to pay. I say that is the way it stands, taking the papers at their face value, so that up to this point I am not troubled at all with the question of consideration."

If it be granted that there arose a presumption of a consideration because of the facts upon which the trial court relied, that presumption was not conclusive, and such must be the situation before the court would be justified in finding as a matter of law that a consideration existed. The presumption depended upon in this case was subject to rebuttal, and

the facts, if the testimony of the defendant be accepted, justify an inference that no consideration existed. Thus a jury question arises, and the defendant being denied the submission of this question to the jury, he suffered an injury which requires that this judgment be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, TREACY, JJ. 11.